## LUNDAY et al. v. FOREMAN.

1. Where a bill of exceptions is filed to a judgment of nonsuit, a brief of
   the evidence need not be incorporated in the bill of exceptions, or at-
   tached thereto, but may, under the Civil Code, § 5529, be approved by
   the judge and made a part of the record and be brought up as such.
2. Under the evidence offered by the plaintiffs in this case, the issue in-
   volved should have been submitted to a jury, and it was therefore error
   to grant a nonsuit.

Argued October 15,—Decided November 16, 1907.

Equitable petition. Before Judge Parker. Clinch superior
court. April 9, 1907.

*R. G. Dickerson, Wilson, Bennett & Lambdin,* and *Spencer R.
Atkinson,* for plaintiffs.

*Cranford & Wilcox* and *S. C. Townsend,* for defendant.

HOLDEN, J. M. J. Lunday and M. F. C. Hudson brought suit
in Clinch superior court against J. S. Foreman, to cancel a deed
made by their mother, Mary Elisabeth Foreman, on July 24, 1906,
to the defendant, whereby certain lands were conveyed to him, on
the grounds, that the maker of the deed was insane at the time
of its execution, and that the defendant by persuasion and undue
influence induced her to sign it when she was of weak mind and
residing in his home. The plaintiffs also prayed for an injunc-
tion against the defendant, prohibiting him from cutting the tim-
ber on the land. The petition alleged that the only heirs at law
of the intestate were the plaintiffs and the defendant. An amend-
ment was allowed, alleging that Mrs. Foreman died intestate and
that there was no administration of her estate. The defendant
denied that his mother was insane at the time of the execution of
the deed, or that he exerted any undue influence upon her to make
it. It was admitted in the answer that Mrs. Foreman, the maker
of the deed, was the mother of the plaintiffs by her first husband
and of the defendant by her second husband; that she owned the
lands described in the deed, and executed to the defendant the
deed, a copy of which was attached to the petition, on the 24th
of July, 1906. Upon the conclusion of the evidence, the court
granted a nonsuit; to which the plaintiffs excepted and bring this
judgment of the court below here for review.

M. F. C. Hudson, one of the plaintiffs testified substantially
as follows: There were several occurrences during her mother's

lifetime that caused the witness to think her insane, or weak-minded. She detailed several instances on which she based this conclusion, which occurred prior to the execution of the deed. Her mother was flighty in all her conversations and could talk but a very few minutes on any subject; after awhile she would bring up the same subject, and would fly off from it again. Sometimes she would remember things she talked about, and again she would not. From the facts detailed by the witness, she considered her mother's mind a blank when she saw her on the 26th of July, 1906, two days after the deed was made. The defendant wrote her on the 24th of July, the day the deed was made, that Mrs. Foreman was very low and not expected to live, and for her to come, but leave her children, as Mrs. Foreman was too nervous to stand them. Mrs. Foreman was about 64 years old at the time of her death, and had been an invalid for 12 or 15 years. From the facts which the witness detailed, and upon which she based her opinion of her mother's mental condition, her mother's mind at times was absolutely gone, so that she knew nothing about what was going on. The two weeks that she was with her mother, beginning two days after the deed was signed, she was not even conscious that the physicians were there, and knew nothing that passed. The witness knew nothing about her mother's mental condition before the deed was made. She was not present on the day the deed was signed, and could not state what her mother's mental condition was on that particular day. It was three weeks after the deed was executed that she was put on notice that the deed was made. On Wednesday before her mother died on the 2d of September, in her mother's presence, the defendant brought up the matter and asked her mother to tell her about the deed being executed, but her mother begged him to tell about the transaction. Finally her mother told about the defendant living with her and taking care of her, but asked the defendant to tell about the execution of the deed, which he did.

It was shown that no will of Mrs. Foreman had been probated, and there had been no administration upon her estate.

W. H. Hudson, the husband of one of the plaintiffs, testified, among other things, as follows. At times during the past several years the mind of Mrs. Foreman appeared to be all right, and at times it did not. He told some of the acts and conduct of Mrs.

Foreman upon which he based his opinion. He was not prepared to swear, as a matter of opinion, that Mrs. Foreman was insane. She was not totally insane. She exhibited other evidences of childishness besides those he mentioned. She was not totally insane up to a few days prior to her death. He did not think Mrs. Foreman had any more mind than a child 8 or 10 years old. He never saw her from February, March, or April, in 1906, until after she made the deed. He was only with her about two days during her last sickness, which was about the 23rd or 24th of August. She was then helpless, and never moved while he was there, and talked but little. He had no reason to know whether her mind had become stronger or weaker from February to August, and knew nothing of her acts and conduct during that time, but would consider her mind weaker in August because her physical condition was then weaker. When he saw her in August, he did not know that he noticed any marked change in her mental condition since he had seen her previous to that time. He had but little opportunity to judge of her mental condition when he saw her in August. He did not know what her mental condition was at the time of signing the deed, because he never saw her.

Dr. L. L. Robinson, a witness for the plaintiffs, testified, in part, as follows. He had been Mrs. Foreman's family physician for years. During the time he treated her in her last illness he saw her every other day from the 14th of July to the 25th of July, inclusive, and he saw her about 10 different times after that up to and including the 25th of August. Her mind would vary during the time he treated her. Sometimes it was stronger than at others. He did observe things in her behavior going to show mental weakness. He gave several instances in her conversation which caused him to believe this. She would talk intelligently about the condition of her case, and then he would see her again when it would seem that her last hope of recovery was gone, and she would express herself as if she did not care to get well. At the time he had one conversation with her he could but notice the change in her mental condition, indicating that her mental condition varied, and that she was not at that time in the same state of mind as before. At times her conversation varied, not realizing that she had talked on that line before. There was no reason he knew why the particular disease with which Mrs. Fore-

man suffered would affect her mind. He did not know as to whether at any time during her illness, and especially prior to the 24th of July, 1906, he considered her totally insane. He could not say about that; he was not treating her from that standpoint. He understood the condition of her case; and had he found her in that condition, it would not have been any more than he expected. When he would call her mind to any particular feature of her case, her mind would act definitely and quickly. It would not always do that; at different times it would not. He recalled a time prior to July 24, 1906, when it did not. He talked with her prior to that time when it did and when it did not. He could not say that she always conversed with him intelligently when he visited her. Sometimes she would comprehend and understand the nature of the instructions he would give her in regard to her treatment, and sometimes she would not. When these spells came on her she would be in an exhausted state one day and better the next day. He would see her one day when she would say she was taking her medicine regularly, was trying to get well, was better and was coming along nicely, and he might see her again in a couple of days and she would be "all to pieces." He considered her seriously sick from the 24th day of July until he saw her last. He could not say that the condition he ascribed to her when he said she was not at herself was simply because of disappointments; it might have been disappointment, or it might not have been.

A witness testified that the property embraced in the deed was worth $5,000 at the time the deed was made.

1. "A nonsuit is not granted merely because the court would not allow a verdict for plaintiff to stand. But if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted." Civil Code, §5347. Applying the principles of law laid down in this section to the facts of this case, we think the court committed error in granting a nonsuit. The question as to whether or not Mrs. Foreman, the maker of the deed, had or had not mental capacity sufficient to make it at the time of its execution, was a question of fact which, under the evidence in this case, should have been submitted to a jury. The testimony of one of the witnesses was that she had

not seen Mrs. Foreman for some time prior to the making of the deed, but she saw her two days after the making of the deed, and her mind was then a blank; and that for the two succeeding weeks she was not even conscious of the presence of physicians and knew nothing that occurred. She detailed acts and conduct of Mrs. Foreman occurring several months prior to the execution of the deed, and, in addition thereto, testified that Mrs. Foreman was flighty in all her conversations and could talk but a few minutes on any subject. It was her opinion, based on the acts and conduct of Mrs. Foreman several months before the execution of the deed, that the latter was insane when the witness saw her two days after its execution. The physician who attended Mrs. Foreman during her last illness stated that he did not know whether or not he considered Mrs. Foreman totally insane. He testified he could not say about that, that he was not treating her from that standpoint, but he understood the condition of her case, and had he found her in that condition it would not have been any more than he expected. From the evidence produced by the plaintiff, we think it should have been left to the jury to determine the question whether Mrs. Foreman at the time of the execution of the deed was mentally capable of making it.

The judgment of the court below is therefore

*Reversed. All the Justices concur.*